UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

v.                                           Case Nos.:  4:19cr57/MW/MAL
                                                         4:22cv119/MW/MAL

DISHAY HENDERSON,
        Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Dishay Henderson's "Motion to Vacate, Correct or Set Aside Pursuant to Title 28 U.S.C. § 2255" and memorandum of law in support and supplement. ECF Nos. 131, 132, 136. After careful consideration of the motion, the record, the relevant law, the Government's response, and Henderson's reply (ECF Nos. 138, 142), I recommend the § 2255 motion be denied without an evidentiary hearing. Henderson cannot show counsel was constitutionally ineffective for failing to raise the meritless arguments presented in his motion.

## I.    BACKGROUND

### A. Procedural History

On August 20, 2019, a federal grand jury returned a superseding indictment

charging Henderson with the following offenses:

> Count One: Enticing a minor to engage in prostitution in violation of 18 U.S.C. § 2422(b);
>
> Count Two: Sex trafficking of a minor (recruit, entice, harbor, transport, provide, obtain, and maintain) in violation of 18 U.S.C. § 1591(a)(1) & (b)(2); and
>
> Count Three: Sex trafficking of a minor (benefitting financially and by receiving anything of value) in violation of 18 U.S.C. § 1591(a)(2) & (b)(2).

ECF No. 18.[1]

Assistant Federal Public Defender Joseph DeBelder represented Henderson at

his trial, which began on January 27, 2020. On the third day of trial, January 29,

2020, defense counsel notified the court that Henderson had asked to represent

himself. After the district court conducted a detailed inquiry, Henderson changed his

---

[1] The superseding indictment added "that is, H.B." to identify the victim in Count One, who was already named in Count Two. No other victims were named in the indictment.

Page 2 of 44

mind and withdrew his request. ECF No. 124 at 311-336.[2] The jury convicted Henderson as charged on January 30, 2020. ECF No. 78.

The Final Presentence Investigation Report (PSR) determined Henderson's total offense level was 41. ECF No. 87, PSR ¶ 47. Because there were two identified victims, the charges were divided into two separate Count Groups. *Id.* at ¶¶ 27-36. Each Count Group had a base offense level of 30. Two-level adjustments were applied (1) for unduly influencing a minor to engage in prohibited sexual conduct and (2) because the offense involved the commission of a sexual act. This yielded a total adjusted offense level of 34 for each Count Group. Because there were two units, the combined adjusted offense level became 36. *Id.* at ¶¶ 41-43. Henderson was subject to a Chapter Four Enhancement as a "repeat and dangerous sex offender against minors" under U.S.S.G. § 4B1.5(b)(1) and his total offense level was 41. *Id.* at 45. Henderson's criminal history score was 13, yielding a criminal history category of VI. *Id.* at ¶¶ 59-60. The advisory guideline imprisonment range was 360 months to life. *Id.* at ¶ 93.

---

[2] The record in this case contains both an "official" and an "unredacted" transcript for volumes I, II, IIIa, IIIb and IV, corresponding to the jury trial. Both versions are sealed. Citations will be to the Court's electronic case file (ECF) docket number of the unredacted transcripts and to the sequential transcript page numbers, rather than the page numbers assigned to each individual document by the ECF system.

The district court sentenced Henderson below the applicable range to a term of 300 months' imprisonment, followed by a life term of supervised release. ECF No. 116 at 52; ECF Nos. 90, 91.

Henderson appealed, challenging the district court's finding that his offense involved two victims. ECF No. 128. The Eleventh Circuit found no clear error in the district court's finding that an individual identified as K.P., who was not named in the indictment, was also a victim in addition to H.B. It affirmed on April 27, 2021. *Id.* Henderson timely filed his § 2255 motion in March of 2022. ECF No. 131.

**B. Evidence At Trial**

On appeal, the Eleventh Circuit summarized the relevant evidence as follows:

> At trial, the Government called H.B. who testified she ran away from home and began staying with Henderson. H.B. said she and her friend K.P. (both minors at the time) met Henderson at McDonalds. H.B. said Henderson allowed her to stay at his house so long as she "had something" for him. This sometimes meant money, drugs, or sex, but it also meant that "every day" Henderson would arrange for H.B. to meet with other men so that he could "exchange [her] for some drugs" or money. H.B. testified that when someone "wanted to have sex with [K.P.]," "[d]rugs had to be exchanged to [Henderson] for that" as well. The Government also called Marvin Perry, who testified that he would drive H.B., and "a couple of times" K.P., to a hotel in order for them to meet with men. To set up the rides, Perry said Henderson would either contact him or "use the other females to contact' him "instead of contacting [him]directly."

ECF No. 128 at 2.

The Government presented the testimony of five witnesses at trial: the minor victim H.B. (ECF No. 123 at 114-201); Investigator Marcia Rodriguez (ECF No. 123 at 202-219); Marvin Perry (ECF No. 123 at 220-275); Investigator Elizabeth Bascom (ECF No. 123 at 276-277; ECF No. 124 at 343-388; ECF No. 111 at 393-424) and Sgt. Christopher Corbitt (ECF No. 111 at 431-458).

H.B. testified about her relationship with Henderson and Perry, and why she continued to stay with Henderson while trying to avoid law enforcement. Investigator Rodriguez, a digital forensic examiner with the Tallahassee Police Department provided details about electronic communication between H.B. and Henderson. Marvin Perry (who pleaded guilty to enticement of a minor to engage in prostitution and production of child pornography in Case 4:18cr74/MW) testified about his involvement in the offense and his observations of Henderson's and H.B.'s relationship. Investigator Bascom, a specialist in sex crime investigations for the Tallahassee Police Department, testified about her investigation and how the case unfolded through interviews with Perry and H.B. and the use of technology. Sgt. Corbitt of the technical operations unit of the Tallahassee Police Department testified about how cellular technology was used to prove the communication between H.B. and Henderson.

The defense rested without putting on a case. ECF No. 111 at 472. Henderson advised the court he agreed with counsel's decision not to call the second victim, K.P., to testify, and he also confirmed he had chosen not to testify. *Id.* at 472-475.

## II.   DISCUSSION

### A. Standards for § 2255 Relief

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a).

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d

1156, 1176 (11th Cir. 2001); *see also Beeman v. United States,* 871 F.3d 1215, 1222 (11th Cir. 2017) (A "§ 2255 movant 'bears the burden to prove the claims in his § 2255 motion.'"). Counsel is not constitutionally ineffective for failing to raise a meritless claim, because declining to raise such a claim cannot be deemed "deficient" and certainly no prejudice can result. *See, e.g., Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA).

Due process of law also requires that a defendant receive effective assistance of appellate counsel on his direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

## B. Henderson's Claims

Henderson separates his claims into fourteen grounds for relief. He did not specifically allege ineffective assistance of counsel for each ground of his § 2255 motion. However, he asserts in his reply that all of his arguments are "based on counsel's below the standard of representation and how counsel prejudiced the

Movant." ECF No. 142 at 10. Therefore, the Court will liberally construe his motion as alleging ineffective assistance of counsel as to each of his grounds for relief, regardless of whether it is specifically stated, rather than invoking procedural bar or default.

### 1. Fundamental error in jury instructions

As his first argument, Henderson contends the jury instructions for Counts Two and Three for sex trafficking contain fundamental error because each included the mens rea element of "reckless disregard" which is not part of the respective statutes. ECF No. 131 at 13. This claim fails because there was no error, let alone fundamental error, in the jury instruction given at trial.

At trial, the district court instructed the jury that Henderson could be found guilty of Count Two, sex trafficking of a minor (recruit entice, harbor, transport, provide obtain, or maintain by any means a person), only if the following facts were proven beyond a reasonable doubt:

(1) The defendant **knowingly** recruited, enticed, harbored, transported, provided, obtained, or maintained by any means H.B. (the victim);

(2) The defendant took the actions in paragraph one **knowing** that H.B. would be caused to engage in a commercial sex act;

(3) That the defendant took the actions in paragraph one knowingly **or in reckless disregard of the fact** that H.B. had not attained the age

of 18 years. However, if the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe H.B., then the Government does not have to prove that the defendant knew that H.B. had not attained the age of 18; and

(4) That the defendant's acts were in or affected interstate or foreign commerce.

ECF No. 110 at 504-505 (emphasis added). As to Count Three, financially benefitting from the sex trafficking of a minor, the Government had to prove:

(1) The defendant **knowingly** benefited financially, or by receiving anything of value, from having recruited, enticed, harbored, transported, provided, obtained, or maintained by any means H.B.

(2) The defendant took the actions in paragraph one **knowing** that H.B. would be caused to engage in a commercial sex act;

(3) That the defendant took the actions in paragraph one knowing **or in reckless disregard of the fact** that H.B. had not attained the age of 18 years. However, if the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe H.B., then the Government does not have to prove that the defendant knew that H.B. had not attained the age of 18; and

(4) That the defendant's acts were in or affected interstate or foreign commerce.

ECF No. 110 at 506 (emphasis added).

In using the "knowing" standard for the proscribed sex trafficking acts and allowing "in reckless disregard" for the third element that H.B. had not attained 18 years of age, the district court's instructions are in line with the Eleventh Circuit

Pattern Instruction O63 for Criminal Cases, which governs offenses under 18 U.S.C. § 1591(a).

The instruction also follows the wording of the statute. By its terms, a section 1591(a)(1) offense involving a minor requires that the defendant "knowingly" engage in proscribed sex trafficking acts, and do so "knowing, or … in reckless disregard of the fact … that the person has not attained the age of 18 years …." 18 U.S.C. § 1591(a)(1). Alternatively, the statute provides that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person … the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c). The jury instruction given at Henderson's trial thus complies with the statutory language and no error has been shown. *See United States v. Whyte*, 928 F.3d 1317, 1328-31 (11th Cir. 2019) (discussing mens rea requirement regarding the victim's age).

There was no error, fundamental or otherwise, to which counsel could have objected to alter the outcome of the proceedings. Henderson is not entitled to relief on his first argument.

## 2. <u>Constructive amendment of indictment</u>

Henderson claims both trial and appellate counsel were constitutionally ineffective for not challenging the "constructive amendment" of the indictment by the introduction of evidence that expanded the scope of the charges.  ECF No. 131 at 13. "A constructive amendment to an indictment occurs when the theory or evidence presented by the government … or the jury instructions … alter the 'essential elements' of the offense contained in the indictment to broaden the possible bases for conviction beyond what is charged." *United States v. Leon*, 841 F.3d 1187, 1192 (11th Cir. 2016). Because the indictment was not constructively amended, neither trial nor appellate counsel was ineffective for failing to pursue this argument.

Count One of the superseding indictment charged that Henderson did "knowingly persuade, induce, and entice, and attempt to persuade, induce, and entice, an individual who had not attained the age of 18 years, that is, H.B., to engage in prostitution." ECF No. 18 at 1. The relevant statute, 18 U.S.C. § 2422(b), includes one additional means of violating the law by providing penalties for any person who "knowingly persuades, induces, entices, *or coerces* any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which

any person can be charged with a criminal offense …" 18 U.S.C. § 2422(b) (emphasis added). Henderson contends that although "coercion" was not charged, evidence of coercion was unconstitutionally added into his case resulting in a constructive amendment of the indictment to which his attorneys failed to object.

Even before the trial began, the district court sua sponte brought up the issue Henderson now raises. *See* ECF No. 117 at 22-23; ECF No. 118 at 55- 76. The court recognized that if a statute proscribes multiple means of committing a particular offense (i.e. persuades, induces, entices or coerces), and the Government only charges one alternative but tries to prove another at trial, this "squarely falls within the definition of a constructive amendment," which would not only be per se reversible, but also plain error. ECF No. 123 at 62-63. The court emphasized that if the Government "did not charge and therefore could not prove a case by a particular theory, [i.e. coercion] then the evidence related to that theory is not relevant." *Id.* at 63. It further noted that even if evidence related to coercion was relevant, such evidence could be excluded under Rule 403 because "the probative value would be substantially outweighed by the prejudice, especially when [ ] talking about violence." *Id.* Nonetheless, the court acknowledged the potential for facts relevant to the three charged elements--persuasion, inducement, or enticement--to overlap

with facts relevant to the uncharged element of coercion, although it continued to express concern about the admission of facts relating *only* to coercion. *Id.* at 63-69. The court reiterated that charging the jury on coercion would be a constructive amendment; therefore, coercion would not be proven at trial, although some *evidence* of coercion could be relevant subject to a 403 analysis. *Id.* at 69-71. In order to clarify its ruling, the court differentiated "coercion," which involves violence or threats of serious violence, from "exercising dominion or control," which it explained falls within the ambit of entice, persuade, or induce, each of which were "fair game." *Id.* at 72-73, 75, 80.

Even before the court's final ruling, in response to the court's concerns, the Government agreed not to raise anything in opening statements related to coercion, rather it said it would frame the nature of the charges in Count One as "enticement." ECF No. 123 at 64. Ms. Daffin for the Government took the time to explain the scope of the court's ruling to H.B. so H.B.'s testimony would avoid mention of any of Henderson's behavior that might fall within the scope of coercion. *Id.* at 74, 76-77.

Henderson now contends that despite the comprehensive pre-trial discussion of this issue, the Government improperly introduced evidence of coercion, and counsel should have objected.

First, Henderson points to H.B.'s testimony that after Henderson got mad and said she was being disrespectful to him he "reached out in the back and grabbed my wrist and was trying to break it." ECF No. 118 at 133. Defense counsel immediately objected to the testimony. At sidebar, the court asked whether counsel wanted an instruction directing the jury to disregard the second part of the answer. After discussion with Henderson, counsel said "at this point, we would just rather move on. I would ask the Court to instruct the Government to—if they intend to elicit any more about this to lead her further." *Id.* at 134. Thus, the record reflects Henderson was consulted and he acquiesced to not calling further attention to the comment.

The second objectionable comment Henderson identifies is in the testimony of Marvin Perry, who knew H.B. only as "Mango." Perry testified:

> [Henderson] was hitting her kind of—it was an altercation. Because when she got in the car, there was a tussle. And I was actually trying to stop them from fighting. Okay. The whole object for me was to stop him from fighting her so I could leave with her to take her wherever she wanted to go to get her out of harm's way.

ECF No. 123 at 230. Again, counsel immediately objected. Counsel insisted that his question asking H.B. whether she liked Mr. Henderson or not did not open the door to Mr. Perry testifying about Henderson hitting H.B. *Id.* At that juncture, counsel told the court he was "contemplating asking for a mistrial" but he wanted to ask

Henderson what he wanted to do. *Id.* After consulting with Henderson, counsel moved for a mistrial. The court acknowledged the impropriety of the testimony but found a curative instruction would suffice, and upon request from the defense, the court said it would instruct the jury that whether any force was or was not used was irrelevant to the charges at issue. *Id.* at 233. Defense counsel affirmed the defense request for the instruction.[3]

Finally, Henderson points to language in the Government's closing argument in which it stated:

> Persuaded, induced, or enticed. What did [H.B.] say? She also said [Henderson] was aggressive. He was intimidating. And he was controlling. Grabbed her on her wrist. Marvin Perry also testified to that type of aggression, that control.

> [Henderson] is continuing to engage in a pattern of behavior through that course of time to get her to do what she [sic]wants her to do, which is have sex with other men for drugs or money so that he could live off of it.

ECF No. 112 at 513.

---

[3] During a sealed portion of the proceedings, defense counsel advised the court he had opened the door to certain testimony from H.B. because it was important for the jury to know she did not like Henderson but she liked Mr. Perry. ECF No. 115 at 8-9. The court noted it had "overcorrected in the limiting instruction to the jury by telling them that [the fight between Henderson and H.B.] was not relevant." *Id.* at 11.

As Henderson's own exhibits show, neither the word "coerce" nor "coercion" was in the jury instructions. ECF No. 132 at 57; *see also* ECF No. 112 at 503. The court found evidence of Henderson grabbing H.B. by the wrist was relevant to the elements of "induce, entice or persuade" *in addition to* coercion, had coercion been one of the elements charged. The jury was given a curative instruction in response to Perry's testimony about a "tussle" between Henderson and H.B., and the court acknowledged it overcorrected in the limiting instruction. ECF No. 115 at 11. The Government's description of Henderson at closing as "aggressive" and "intimidating" or "controlling" did not have the effect of expanding the indictment. *See United States v. Behety*, 32 F.3d 503, 508-09 (11th Cir. 1994) ("When considering an argument that an indictment was constructively amended, we are required to determine whether the prosecutor's actions or the court's instructions, 'viewed in context,' resulted in the expansion of an indictment either literally or in effect.") (*quoting United States v. Andrews*, 850 F.2d 1557, 1559 (11th Cir. 1988)).

Because the indictment was not constructively amended, neither trial nor appellate counsel was ineffective for failing to pursue this argument.

### 3. <u>Multiplicitous indictment</u>

Henderson's third claim is that his indictment is multiplicitous because it charges the "same offense" within both Counts Two and Three. In support of his contention, he points to court's statement in the jury instructions that he was charged with "sex trafficking of a minor" as to both Counts Two and Three of the indictment. ECF No. 112 at 502. Henderson's argument is without merit.

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008). A multiplicitous indictment "violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense." *United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010). To determine whether an indictment is multiplicitous, the Court must determine whether the allegedly duplicative counts satisfy the test set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). The *Blockburger* test is satisfied if each count "requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 299. Otherwise stated, "charges in an indictment are not multiplicitous if the charges differ by even a single element or alleged fact." *United States v.* Woods, 684

F.3d 1045, 1060 (11th Cir. 2012) (citing *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991)).

Henderson's indictment was not multiplicitous because the two charges in question contain different elements of proof and punish different wrongs. Section 1591(a)(1) punishes individuals who directly engage in sex trafficking, and section 1591(a)(2) punishes individuals who financially benefit from participation in such a venture. 18 U.S.C. § 1591(a)(1)-(2); *see Doe #1 v. MG Freesites, LTD,* 676 F. Supp. 3d 1136, 1150 (N.D. Ala. 2022) (describing separate punishments under § 1591(a)(1) for primary violation for direct engagement in sex trafficking and § 1591(a)(2) for secondary participation for financial benefit).  Furthermore, "[a] plain reading of § 1591(a)(1) and (a)(2) demonstrates that the two subsections meet the *Blockburger* test of whether separate convictions are authorized." *United States v. Flanders*, 752 F.3d 1317, 1338 (11th Cir. 2014).

In Count Two, the Government was required to prove the following beyond a reasonable doubt:

**(1) The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means H.B.;**

(2) the defendant took the actions in paragraph one knowing that H.B. would be caused to engage in a commercial sex act;

(3)    that the defendant took the actions in paragraph one knowingly or in reckless disregard of the fact that H.B. had not attained the age of 18 years. However, if the government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe H.B., then the Government does not have to prove that the defendant knew that H.B. had not attained the age of 18; and

(4) that the defendant's acts were in or affected interstate or foreign commerce.

ECF No. 112 at 504-505 (emphasis added). The second, third, and fourth elements of Count Three were identical to the above-listed elements of Count Two. The difference lies in the first element the Government was required to prove, which was:

**(1) The defendant knowingly benefited financially, or by receiving anything of value, from having recruited, enticed, harbored, transported, provided, obtained, or maintained by any means H.B.;**

ECF No. 112 at 506 (emphasis added). Therefore, the difference in the first element of proof as to each charge defeats Henderson's argument about the multiplicitous indictment. *Flanders*, 752 F.3d at 1337-38 (11th Cir. 2014) (rejecting argument that convictions under § 1591(a)(1) and (a)(2) arising from the same set of facts was multiplicitous and violated double jeopardy). Neither of Henderson's attorneys were constitutionally ineffective for failing to make this meritless argument.

### 4.  <u>Omission of mens rea element of indictment</u>

Henderson next claims Count Two of the indictment does not state an offense because it omits the "mens rea" element of the offense. ECF No. 131 at 14.

Count Two charges that Henderson:

> did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain, by any means, a person, that is, H.B., having a reasonable opportunity to observe, **and knowing,** *and* **in reckless disregard** of the fact, that H.B. had not attained the age of 18 years and would be caused to engage in a commercial sex act. In violation of Title 18 United States Code, Sections 1591(a)(1) and 1591(b)(2).

ECF No. 18 at 2 (emphasis added).  In contrast, Henderson notes that the statute describes the offense in the disjunctive, using the language "knowing **or** … in reckless disregard of the fact …that the person has not attained the age of 18 years." 18 U.S.C. § 1591(a) (emphasis added). Henderson complains that "it is impossible for [him] to be both knowing **and** in reckless disregard of H.B.'s age." ECF No. 131 at 14 (emphasis added).

Henderson is mistaken that the use of "and' was a violation of his rights. As the Eleventh Circuit has stated: "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may

properly be framed in the disjunctive." *United States v. Simpson*, 228 F.3d 1294, 1300 (11th Cir. 2000); *United States v. Britt*, No. 23-10829, 2024 WL 2291866, at *1 (11th Cir. May 21, 2024) (quoting *Simpson*). Section 1591 allows multiple ways for the government to prove a defendant's mens rea as to the victim's age. *Flanders*, 752 F.3d 1317, 1328 (11th Cir. 2014). Counsel was not constitutionally ineffective for failing to object.

### 5.  Structural error in jury instructions

Henderson contends the jury instructions as to Counts Two and Three contained structural error "based on the mens rea element of reckless disregard for the purported victim's age and any physical force or violence that may have occurred allegedly between the Petitioner and the victim, resulting in inflaming the passions of the jury during the Petitioner's trial." ECF No. 131 at 15. He cites the Supreme Court decision of *Borden v. United States*, 593 U.S. 420 (2021). *Borden* held that a criminal offense that requires only a mens rea of recklessness cannot count as a "violent felony" under the elements clause of the Armed Career Criminal Act. *Id.* at 445. *Borden* is inapposite to the arguments Henderson makes here and does not afford him relief. This argument is frivolous.

### 6.  Failure to identify state statute in the indictment

Henderson next asserts counsel was ineffective because he did not challenge the Government's and the Court's failure to identify the specific Florida Statute under which he could have been charged in Count One of the indictment. He appears to assert that 18 U.S.C. § 2422(b) requires that both the indictment and the jury instructions cite the Florida Statute, and failure to do so renders the indictment deficient. He is mistaken.

Count One charged that Henderson "using a facility and means of interstate commerce, did knowingly persuade, induce, and entice, and attempt to persuade, induce, and entice, an individual who had not attained the age of 18 years, that is H.B. *to engage in prostitution*." ECF No. 18 at 1 (emphasis added). The argument Henderson now makes focuses on language in Title 18 U.S.C. § 2422(b) which proscribes using a means of interstate commerce to persuade, induce or entice a minor "to engage in prostitution *or any sexual activity for which any person can be charged with a criminal offense*." 18 U.S.C. § 2422(b) (emphasis added). In this case, the offense in question was prostitution, so the indictment did not include, and did not need to include, the italicized language. The jury instructions provided that "[a]s a matter of law, prostitution is a crime under Florida Law" and defined

prostitution as "engaging in or agreeing or offering to engage in any lewd act with or for another person in exchange for money or other consideration." ECF No. 110 at 503-504. Henderson's claim that the indictment failed to provide him with sufficient and adequate notice of the charge (ECF No. 132 at 23) is disingenuous.

An indictment is sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Doak*, 47 F. 4th 1340, 1351 (11th Cir. 2022). The Eleventh Circuit has expressly found that an indictment under § 2422(b) identifying the prohibited conduct as "child molestation," even without any statutory citation, was sufficient. *See United States v. Bolen*, 136 F. App'x 325, 329 (11th Cir. 2005). In *Doak,* the court also rejected the argument that the statute criminalizing the sexual act (child molestation) should have been identified in an indictment under 18 U.S.C. § 2423(a), finding the "element was sexual activity as a general category and the specific state statutes were only means by which the jury could identify that the sexual activity was criminal." *Doak*, 47 F. 4th at 1352-1353.

The three cases on which Henderson relies do not direct a different conclusion.[4] The fact that the Eleventh Circuit has upheld § 2422(b) convictions where the indictment referenced a state statute does not mean that this is constitutionally *required*. In this case, the underlying offense was specifically identified as prostitution. Counsel was not constitutionally ineffective for failing to raise a meritless objection to the omission of a citation to the specific Florida Statute criminalizing prostitution.

### 7. **Constructive amendment of Count One**

Henderson asserts that Count One of the indictment was constructively amended because, although he was not charged with the element of coercion "the Government was allowed to use coercion against the Petitioner throughout his trial."

---

[4] In *United States v. Lanzon*, 639 F.3d 1293 (11th Cir. 2011), the district court dismissed a § 2422(b) indictment naming Fla. Stat. § 800.04 as the basis for the offense, because the Government did not specify which subsection of the state statute applied. The case later proceeded on a superseding indictment.

In *United States v. Jockisch*, 857 F.3d 1122, (11th Cir. 2017), the indictment identified three Alabama statutes that arguably could have been violated by the defendant's conduct. The court rejected the defendant's argument that the jury had to unanimously agree which statute had been violated, because each was merely a possible means by which defendant met an element of the offense, not an element of the offense. *Id.* at 1127.

In *United States v. Godwin*, 399 F. App'x 484, 487 (11th Cir. 2010), the court upheld defendant's conviction on an indictment that identified the underlying crime as Fla. Stat. § 800.04(4)(a)-(b).

ECF No. 131 at 16. This claim duplicates the arguments made in Ground Two, which were shown to be without merit.

Henderson also states counsel was ineffective "for not challenging the indictment as being defective because it does not state that 'one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the laws of Florida.'" ECF No. 131 at 16. As noted above, the jury instructions were clear, and the indictment was not defective. *Doak*, 47 F. 4th at 1352-1353. No relief is warranted on either portion of this claim.

### 8.  Cumulative errors resulting in ineffective assistance of counsel

Henderson identifies eight alleged errors by counsel which he contends result in cumulative error requiring reversal of his convictions.

First, Henderson complains counsel never challenged the Government to prove whether Henderson knew or should have known the victim was under 18 years old, and he claims he never knew the victim's age until a day before he was arrested. ECF No. 131 at 16. H.B. testified police had shown Henderson the flier identifying her as a missing runaway juvenile, and he warned her to be careful. ECF No. 123 at 142-144, 146. However, it was also clear from H.B.'s testimony that Henderson had the opportunity to observe her, given that the two had had sex on multiple occasions.

*Id.* at 125, 190. Henderson's conclusory claim that H.B. had manipulated him into believing she was 18 years old (ECF No. 132 at 27) does not help him. *See Whyte*, 928 F.3d at 1330 (When a "defendant had a reasonable opportunity to observe the victim, his mistake about the victim's age is no defense.") Furthermore, counsel moved for a judgment of acquittal on this very issue and the motion was denied. *See* ECF No. 109 at 459-460. Henderson does not suggest what additional arguments counsel could or should have made that would have affected the court's ruling as to this issue and the outcome of the proceedings.

Second, Henderson asserts the Government never proved he used a cellular phone or the internet to "persuade, induce, and entice" the victim to engage in prostitution. ECF No. 131 at 16. Contrary to his assertion, the Government introduced evidence from H.B. that she and Henderson communicated by phone and through a texting app called "TextNow" that required her to be on Wi-Fi, because he wanted to know where she was, what she was doing, and how much money she was making. ECF No. 118 at 137-138, 141. Again, counsel moved for a judgment of acquittal on this issue, and the motion was denied, ECF No. 109 at 461-463, and Henderson offers no suggestion as to what arguments a reasonable lawyer could have made to change the outcome of the proceedings.

Third, Henderson claims counsel was ineffective for failing to interview the victim and investigator C. Felton, "thereby not allowing the jury to hear all of the evidence." ECF No. 131 at 16. He does not explain how an interview would have allowed the jury to hear more evidence and specifically, what testimony or evidence he believes would have been presented as a result of such an interview. His conclusory allegations do not entitle him to relief.

Fourth, Henderson claims the Government committed misconduct because it knew H.B.'s mother had stated, under penalty of perjury, that "she had given H.B. her dependency from the State court." ECF No. 131 at 16-17; ECF No. 132 at 74. He claims that the Government's failure to turn over this exculpatory information was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 132 at 27. Whether H.B. was a "fugitive from justice" rather than a "runaway," *see id.,* does not change the fact of her chronological age. Furthermore, how this relates to the competency of counsel or the outcome of the proceedings is unclear. Henderson has not shown that counsel was ineffective or that he suffered prejudice.

Fifth, Henderson contends the Government knowingly used false and misleading testimony from the victim's text messages to prove the element of interstate commerce. ECF No. 131 at 17. Specifically, he asserts that he never

received text messages H.B. sent to him the day before his arrest because she deleted the messages before he could receive them. ECF No. 132 at 28, 75. However, this was not the only evidence of the use of telephone or Wi-Fi communication between Henderson and H.B. Thus, he has not shown how counsel's performance could be deemed constitutionally ineffective for failing to challenge the element of interstate commerce.

Sixth, Henderson claims counsel was ineffective for not challenging the allegedly false testimony of Government witness Marvin Perry at trial. ECF Nos. 131 at 17; 132 at 28, 76. He notes that Perry was interviewed before trial by Investigator Bascom and claims Perry's testimony at trial was markedly different from what he told Ms. Bascom. Contrary to Henderson's suggestion, counsel conducted a skillful cross examination of Mr. Perry at trial. ECF No. 118 at 240-258. During such, Perry admitted he was awaiting sentencing after pleading guilty to enticement of a minor (H.B.) to engage in prostitution and production of child pornography and he was cooperating in hopes of receiving a sentence reduction. Counsel questioned Perry about his interview with Investigator Bascom and Perry admitted both that he was high during his interview with her, and that he had attempted to lie or minimize his accountability in hopes he wouldn't get charged

with a crime. The fact that Perry had made false statements to Investigator Bascom during his interview was well-established, as was Perry's assertion that he came clean to the investigator by the end of the interview.

Counsel continued a vigorous assault on Perry's credibility during closing arguments. He emphasized seeming inconsistencies between Perry's and H.B.'s testimony and argued that Perry said whatever suited him at the time and only admitted things when he things he could get something out of it. ECF No. 110 at 520, 522, 527, 528-532. Henderson has not shown counsel's performance with respect to Perry's testimony was deficient.

Seventh, Henderson asserts the jury instructions as to Count Three did not track the indictment, as they allowed him to be convicted without proving that he participated in a "venture." ECF No. 131 at 17. Count Three of the indictment charged that Henderson "did knowingly benefit financially and by receiving anything of value, from participation in a venture" involving the underage victim's in a commercial sex act, as charged in Count Two. ECF No. 18 at 2-3. Henderson focuses on the word "venture." Under the statute, "[t]he term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(6).

The entire backdrop for this case was Henderson's venture to traffic H.B. for commercial sex acts. *See* ECF No. 128 at 2 (opinion of Eleventh Circuit). "'[E]very day' Henderson would arrange for H.B. to meet with men so that he could 'exchange [her] for some drugs' or money." *Id.* According to Marvin Perry, Henderson bragged about "pimping girls." ECF No. 123 at 239. Perry associated with Henderson in this venture by driving H.B. to meet with men. ECF No. 128 at 2. Henderson or one of the other females would contact Perry to set up rides for H.B. to engage in commercial sex acts for Henderson. *Id.*

Thus was the association in fact of two or more individuals in a venture to sex traffic H.B.: Henderson as pimp, Perry as transport driver, other females contacting Perry for transport, and male customers providing drugs or money in exchange for H.B.'s commercial sex acts. The jury instructions did not use this specific word "venture," but they correctly described the elements of the charged offense, including that the Government had to prove Henderson "knowingly benefitted financially, or by receiving anything of value, from having recruited, enticed, harbored, transported, provided, obtained, or maintained by any means H.B … knowing that H.B. would be caused to engage in a commercial sex act." ECF No. 110 at 506.

"A constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012) (internal quotation marks omitted). That is not the situation in this case. There was ample evidence that Henderson, as H.B.'s pimp, knowingly benefited from his participation in a venture to recruit, entice, harbor, transport, or maintain H.B. to cause her to engage in commercial sex acts. Considering the jury instructions "in context and in light of the trial evidence" there is no danger that "the jury was misled into convicting [Henderson] for a crime for which he was not indicted." *Id.* at 1313. Counsel was not constitutionally ineffective for failing to object when the jury instructions.

Eighth and finally, Henderson states the Government told the jury it did not "have" any phone conversations between Henderson and H.B., and he argues he could not be charged with interstate commerce if there were no phone conversations or text messages discussing sex trafficking. The Government "had" no recorded conversations, and many communications were made through Wi-Fi rather than a regular phone plan. There was sufficient, albeit not overwhelming evidence of a connection to interstate commerce. Investigator Bascom testified that H.B.'s phone

had been made in China. ECF No. 119 at 370. She also testified that Henderson's phone number was listed in H.B.'s contacts and there was at least one text message from H.B.'s phone to Henderson's phone. *Id*. at 373-74. As noted previously, counsel's motion for judgment of acquittal as to the interstate commerce element was denied and Henderson has not shown counsel was constitutionally deficient for failing to make a different or better argument that might have succeeded.

The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26, (1984)). Here, Henderson has not shown any constitutional error by counsel, and asserting multiple non-meritorious claims does not yield a favorable result. *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "Twenty times zero equals zero."). No relief is due on this aggregation of claims.

9. **<u>Constructive amendment of Count Three by adding victim to the jury instructions</u>**

Henderson claims counsel was constitutionally ineffective for not challenging the fact that no victim was named in Count Three of the indictment. ECF No. 131 at 17. Henderson's suggestion that he did not have "fair notice of the complete charge against him" (ECF No. 132 at 31) is disingenuous, and his argument fails.

As noted by Henderson, Federal Rule of Criminal Procedure 7(c)(1) provides the indictment "must be a plain, concise, and definite written statement of the essential fact constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Count Three of the superseding indictment charged Henderson with knowingly benefitting financially and by receiving anything of value from participating in an act in violation of 18 U.S.C. § 1591(a) "as set forth in Count Two of this indictment." ECF No. 18 at 3. Count Two specifically identified H.B. as the individual who would be caused to engage in a commercial sex act. *Id.* at 2. Consistent with the identification of H.B. as the victim in Count Two, the jury instructions referenced H.B. as the only victim in this case. ECF No. 110 at 506. Counsel was not constitutionally ineffective for not objecting to the jury instructions in this regard.

## 10. <u>Structural error in jury instructions on Counts Two and Three</u>

Henderson complains in his tenth ground for relief that the jury instructions as to Counts Two and Three contained structural error because of the wording of the third and fourth elements of proof as to each count, and counsel was ineffective for failing to object.

The third and fourth elements of proof as to both Count Two and Count Three of the jury instructions were as follows:

> (3) that the defendant took the actions in paragraph one knowing or in reckless disregard of the fact that H.B. had not attained the age of 18 years. However, if the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe H.B., then the Government does not have to prove that the defendant knew that H.B. had not attained the age of 18; **and**

> (4) that the defendant's acts were in or affected interstate or foreign commerce.

ECF No. 110 at 15-16 (emphasis added). Henderson contends that the use of "and" likely caused confusion for the jury, and led the jurors to believe the Government did not have to prove the fourth element. He suggests the jury could have read the instructions as stating if the Government proved beyond a reasonable doubt that he had a reasonable opportunity to observe H.B, it did not have to prove (1) that he knew H.B. had not attained the age of 18 and (2) that his acts were in or affected interstate or foreign commerce. He states that either removing the conjunction or

interchanging the position of the third and fourth elements would have obviated any juror confusion or deception.

The undersigned does not agree with Henderson's interpretation that the court "informed the jury that they were <u>not</u> required to prove interstate commerce." ECF No. 132 at 34. Such an interpretation would require the jurors to ignore basic logic. There was no error, and counsel was not constitutionally ineffective for not raising this issue before the district court.

### 11. <u>Denial of mental health expert testimony</u>

Henderson, who asserts he suffers from a "very low I.Q. level" and "various mental disorders," complains counsel never ensured he saw a mental health specialist. ECF No. 131 at 18. Henderson makes the conclusory statement that the outcome of the proceedings would have been different had he undergone such an evaluation. However, he does not suggest he was incompetent to stand trial or that his disorder(s) or condition(s) prevented him from understanding his actions underlying the offense conduct. Henderson does not describe what additional evidence a mental health specialist could have offered beyond what was already introduced in this case.

The record does, however, provide some indication that Henderson was competent to stand trial. First, there is no suggestion from the transcripts of the proceedings that Henderson's conduct was anything other than respectful and appropriate at trial. ECF No. 112 at 544; ECF No. 111 at 429. Information about Henderson's mental health, including his diagnoses of bipolar disorder and schizophrenia at age 16 and his history of substance abuse, was included in the PSR. ECF No. 87, PSR ¶s 78-81. The undersigned also notes Henderson had multiple prior convictions and myriad arrests and nothing in the PSR or elsewhere in the record suggests his mental health affected the disposition of those cases.

Counsel thoroughly addressed Henderson's background, mental health and substance abuse history in a sealed sentencing memorandum and attachments, in which he argued the court should take this information into consideration in reviewing his client's conduct. ECF No. 88. Counsel continued his arguments in this vein at sentencing. ECF No. 116 at 45-47. Henderson himself brought up his mental illness and substance abuse history during his allocution, *id.* at 38-39, and the court acknowledged its consideration of the mitigating factors in imposing a below-guidelines sentence in this case. *Id.* at 44-45, 48-49, 52.

In sum, Henderson has not shown that the outcome of the proceedings would have been different if a mental health expert had been consulted. Counsel was not ineffective under *Strickland* for failing to request same.

### 12. Omission of 18 U.S.C. § 1591 from jury instructions

Henderson next claims that the jury instructions as to Counts Two and Three were structurally flawed because they omitted reference to 18 U.S.C. § 1591(c).[5] Henderson concedes that the language of § 1591(c) was presented to the jury but he claims that because the actual statutory citation to § 1591(c) was omitted, neither Henderson nor the jury knew which section he had been charged with. ECF No. 131 at 19; ECF No. 132 at 37. He claims counsel was ineffective for not having objected to this omission.

Henderson is mistaken that the jury instructions must specifically cite § 1591(c). Eleventh Circuit Pattern Instruction O63 applies to alleged violations of

---

[5] This section provides:

In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtaining, maintained, patronized or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

18 U.S.C. § 1591(c)

18 U.S.C. § 1591(a)(1). The pattern instruction contains the optional language from § 1591(c):

> If the Government proves beyond a reasonable doubt that the Defendant had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained or maintained, then the Government does not have to prove that the Defendant knew that the person had not attained the age of 18 years.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 2016 at 386 (Instruction O63). The annotations and comments to this instruction cite 18 U.S.C. § 1591(c) as stating:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 2016 at 387. The current Criminal Pattern Jury Instructions, last revised in April of 2024, contain the identical optional language. There is no authority for Henderson's suggestion that the court was required to include a specific citation to § 1591(c) in its instructions to the jury. Counsel was not constitutionally ineffective for failing to make this objection, and no relief is warranted on this claim.

### 13. Failure to challenge lack of search warrant

Henderson claims trial counsel was constitutionally ineffective because he did not ask the Government to produce a probable cause search warrant to the allegedly illegal search and seizure of his "phone data, cell towers, cell records and buildings and metal towers." ECF No. 131 at 19. In support of this argument, Henderson cites to pages 433 through 456 of the trial transcript, some of which he provides as exhibit 36 to his memorandum (ECF No. 132 at 88-98). ECF No. 132 at 39.

Although Henderson talks about his cell phone data, the trial testimony he identifies concerns Marvin Perry's cell phone data, not his. *See* ECF No. 111 at 438:9-12; 445:14-16; 446:4-8; 448:1-6 (identifying data analyzed as Perry's T-Mobile account). Henderson does not have a reasonable expectation of privacy in Perry's phone. "Fourth Amendment rights are personal rights that may not be vicariously asserted." *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). Henderson has failed to show that counsel was ineffective. No relief is warranted on this thirteenth claim.

## 14. Fundamental error, structural error and misconduct by court

Henderson's fourteenth ground for relief is that the district court committed "fundamental error, structural error and misconduct" throughout the proceedings.[6] Henderson's complaint relates to the court's "assistance" in telling the Government what to do to introduce certain evidence from H.B. about her interactions with him.

Contrary to Henderson's suggestion of unfairness, the court's comments were directed at ensuring the Government did not violate the court's ruling (in Henderson's favor) that evidence of coercion would not be permitted. ECF No. 123 at 69. The court admonished the Government that it could not "back-door" in the theory by inflaming the passions of the jury and trying to prove the crime id did not charge. *Id.* It did permit the Government to lead the witness through the potentially dicey testimony to ensure no violation of its ruling. Such actions were not error, much less "fundamental error, structural error and misconduct."

---

[6] Fundamental constitutional errors are a limited class of errors "so intrinsically harmful as to require automatic reversal (i.e. 'affect substantial rights') without regard to their effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7 (1999) (citations omitted). The Neder Court found errors to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Id.* at 8. (*citing Gideon v. Wainwright*, 372 U.S. 335 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (denial of public trial); *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (defective reasonable-doubt instruction)).

### 15. <u>Supplemental grounds for relief (ECF No. 136)</u>

Henderson filed a "Request to Supplement" his § 2255 motion before the Government had filed its response. ECF No. 136. First, Henderson argues that Count Two and Count Three were multiplicitous. This argument is without merit, as discussed in Ground 3, *supra*.

Next, Henderson argues that the special condition of supervised release prohibiting the possession of a computer is unconstitutionally vague. ECF No. 136 at 2. He claims use of the term "computer" would "cause men of common intelligence to necessarily guess at its meaning and differ as to its application," and the condition is unconstitutional. *Id.* Henderson's argument is disingenuous.

The Special Conditions of Supervision, which are standard to such offenses, provide Henderson "shall not possess or use a computer or smartphone without the prior approval of the probation officer." ECF No. 90 at 5. The term "computer" is defined as including "any electronic device capable of processing or storing data as described at 18 U.S.C. § 1030, and all peripheral devices." *Id.* Henderson will be required to enroll in the probation office's "Computer and Internet Monitoring Program and abide by the requirements of the program. He shall not access the internet or any on-line computer service without prior approval of the probation

officer and he shall consent to periodic unannounced examinations of his computer equipment to ensure compliance. *Id.* The Eleventh Circuit has held that a restriction on computer usage as a special condition of a lifetime term of supervised release is not plainly unconstitutional. *United States v. Bobal*, 981 F. 3d 971, 976-977 (11th Cir. 2020); *United States v. Carpenter*, 803 F. 3d 1224, 1239-40 (11th Cir. 2015). Counsel was not constitutionally ineffective for failing to object to these conditions.

## III.    CONCLUSION

An evidentiary hearing is not necessary to resolve Henderson's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). Henderson cannot show either trial or appellate counsel was constitutionally ineffective and his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1.     The motion to vacate, set aside, or correct sentence (ECF No. 131) be DENIED.

2.     A certificate of appealability be DENIED.

DONE on January 28, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

## NOTICE TO THE PARTIES

The case was referred to a magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. See N.D. Fla. Loc. R. 72.2(B); see also 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.